## SUCCESSION OF LEE.

A sale of the moveables of a succession made by an administrator, under an order of court for the payment of debts, though far less than their appraised value, will not render the administrator liable for the difference between that value and the price at which they were adjudicated, where the evidence shows that they were sold for their full value, and that the succession sustained no injury thereby.

Decision in the case of *Macarty's Succession*, 3 An. 517, as to the fees of counsel and the character of the evidence by which courts should be governed in deciding on such claims, —affirmed.

Where an administration instead of being beneficial, has been injurious, to a succession, the administrator will not be allowed commissions.

An administrator who renders an account is bound to prove the items of his account by evidence, and may be held to strict proof of them by the parties interested, without a formal opposition on their part.

APPEAL from the District Court of Plaquemines, *Rousseau*, J. *Frost*, for the appellant. *Lombard, contra.* The judgment of the court was pronounced by

KING, J. *Lee* died in February, 1847, leaving a succession, consisting chiefly of a tract of land on the Mississippi river and of about twenty slaves. At the time of his death he was engaged in clearing the land for the purpose of cultivation, and in selling the wood for fuel. Shortly after his death, *Ronquillo* caused himself to be appointed administrator of the succession. An inventory was made, and, by the advice of a family meeting, a sale of the whole property was ordered ; but, failing to produce the price of appraisement at the first exposure, no adjudication was made. A re-appraisement was advised and ordered, but appears never to have been made. During the interval between the inventory and the sales which were subsequently made, the management of the property was confided to an overseer, employed by the administrator. In the month of September, the administrator applied for a sale of the moveables for cash, alleging their perishable nature, their exposure to deterioration and loss, and the indebtedness of the succession. A sale for cash was ordered by the judge. Under the denomination of moveables, were sold the horses, cattle, and plantation tools generally. There was also sold a large quantity of cordwood, far below its appraised value. The remaining articles produced, in the aggregate, their appraisement.

Immediately after this sale a tableau of distribution of the fund thus produced was filed by the administrator ; and, some time after the sale of the remaining property, which occurred in February, 1848, a second tableau was filed. Both were opposed by *Mrs. M'Comas*, the grand-mother of the minor children of the deceased.

The opponent claims: 1st. That the administrator be held liable for the loss, <span style="float:right">SUCCESSION OF<br>LEE.</span> sustained on the sale of the moveables, which, it is alleged, were illegally adjudicated below their appraised value, and at a great sacrifice. 2d. That the administrator be charged with the hire of the slaves while they were in his possession as administrator, on the ground that through his negligence and mismanagement, they were not profitably employed during that time, but, on the contrary, were a source of heavy expense to the succession. She also opposed the following claims: 1st. That of *L. Lombard, Esq.*, for $700, for professional services as an attorney, on the ground that the demand is excessive and disproportioned to the services rendered. 2d. The claim of *Le Riche*, for his wages as overseer or manager for eleven months. 3d. The commissions of the administrator. Other items were opposed, to which it is unnecessary to advert, as the oppositions were sustained, and the judgment in those respects, has been acquiesced in.

The district judge reduced the claims of *Lombard*, and *Le Riche*, and allowed the administrator his full commissions. The opponent is dissatisfied with the judgment, and has appealed.

1. Under the evidence, we think, that the administrator cannot be held answerable for the difference between the appraised value and the price produced by the artices sold as moveables. The succession was, at the time, indebted, and there appears to have been a necessity for a sale of at least a part of it's effects. A family meeting had previously advised the sale of the whole property, which, as we have seen, was not made in consequence of the high appraisement, and a re-appraisement was ordered. The agricultural season was passed, and the implements of husbandry were no longer needed. The cordwood was decaying, and daily deteriorating in value. All of the articles sold were perishable, and the moment selected for the sale is not shown to have been unpropitious. It is further to be observed that, the sale was made under the order of the judge, and was not opposed. The loss sustained was upon the wood, of which there were about 1,700 cords, appraised at $4,317. It brought at the sale but $545. But the reason of this discrepancy in price is satisfactorily shown. It was, in the first instance, appraised too high, and at the time of the sale had so much deteriorated in value by decay, that a large portion of it was abandoned by the purchasers as being unfit for use. The evidence, we think, shows that the articles sold as moveables brought their full value, and although the adjudication below the appraisement may not have been strictly legal, it appears to have resulted in no loss to the succession, for which the administrator can be held liable.

We think however, that the administrator acted unwisely in causing to be sold the tools, carts, and teams, necessary for carting and hauling wood, which should have been reserved for use until the sale of the land and slaves. But this enquiry more properly belongs to the suit instituted to remove him from his trust.

II. The second ground is not sustained by evidence. It is true that the property was so mismanaged by the administrator, as to remain wholly unproductive while under his care. But there is no evidence in the record which enables us to determine what loss resulted from this mal-administration.

III. With regard to the fees of counsel, and the character of the evidence by which courts should be governed in determining upon such claims, our opinion has been so fully expressed in the case of *Macarty's Succession*, 3d An. Rep. 517, in which we embodied and adopted the opinions of our predecessors in the

Succession of cases of *Dorsey* (5 Mart. N. S. 401), and *Stein* v. *Bowman*, (9 La. 284), that

Lee.    we deem additional remark unnecessary, further than to observe, that the reasoning and the principles established in those cases are strictly applicable to the facts of the present.

The services which the counsel in the present instance was called on to perform were of the simplest kind, requiring neither labor nor research. After a careful examination of the record, we think that $150 is an ample compensation for the services rendered to the succession, and we reduce the claim to that sum.

IV. The claim of *Le Riche*, we are of opinion should be further reduced.

It is shewn that he was a young man without experience either as a planter or as an overseer, who had never before had the management of a plantation or slaves. A short time prior to being employed by the administrator, he had offered his services as an overseer to a planter of the neighbourhood, at $300 a year, saying that he was without experience, and desired to become acquainted with the business. The administrator employed him at $2 50 per day. 'The highest rate fixed by the evidence, for the services of a competent and good manager, is from $400 to $500 a year. The incompetency of *Le Riche* is conclusively shown. We think that $275 would be a full compensation for his services in taking care of the property, which is at the rate that he himself desired to engage in similar service a short time previously.

V. For the reasons stated in the case of *M'Comas* v. *Ronquillo*, we are of opinion that the administration of the defendant so far from having been beneficial has been injurious to the succession, and that the administrator is entitled to no commissions.

On the trial, the counsel for the opponent required proof of certain claims placed on the tableau. The judge however dispensed with proof, and ordered the claims to be paid, on the ground that they had not been specially objected to, and a bill of exceptions was taken to his opinion.

We think that the judge erred. An administrator is bound to substantiate the items of his account by evidence, and may be held to a strict proof of them by the parties in interest, without a formal opposition. For the purpose of enabling the administrator to establish those claims, it. becomes necessary to remand that part of the case.

It is therefore ordered that, so much of the judgment of the district court as decrees the payment of five hundred dollars to *L. Lombard*, of six hundred and sixty dollars to *Le Riche*, of commissions to the administrator, and the claims numbered 3, 8, 9, 10, 17, and 22, on the first tableau filed, be reversed. It is further ordered that the credit for the payment of the claim of *L. Lombard* be reduced to one hundred and fifty dollars; that the credit for the payment of *Le Riche* be reduced to two hundred and seventy-five dollars; and that the commissions of the administrator be disallowed. It is further ordered that the cause be remanded, for the purpose of enabling *M. Ronquillo* to adduce proofs in support of the claims numbered 3, 8, 9, 10, 17, and 22, of the first tableau filed. In other respects the judgment appealed from is affirmed, and *Manuel Ronquillo* decreed to pay over to the tutor of the minor children of *James Lee*, deceased, the balance remaining in his hands, after retaining a sum sufficient to meet the claims numbered 3, 8, 9, 10, 17, and 22, on the first tableau, in the event of his being hereafter decreed to pay the same. The costs of this appeal to be borne by the succession.