ROBERT PEALE et al. *v.* T. P. WHITE.
STATE OF LOUISIANA *v.* JUDGE OF THE FIFTH DISTRICT.
T. P. WHITE, Praying for a Writ of Mandamus.

The bequest of the interest of a fund in perpetuity, when the naked property in the fund is given to no one else in express terms, is evidence of the intention of the testator to bequeath the fund itself; and the meaning of the words used, should be ascertained with reference to that intention.

If the deceased was a resident of England, transiently passing through our country, the disposition of his personal property, according to the laws of England, would be valid; but if the deceased was domiciliated in Louisiana, his personal property was domiciliated here with him, consequently he was obliged to dispose of it according to the laws of this State.

The executor is not bound to deposit in bank the government stocks, nor the bills receivable, of the succession which he administers.

The money of the succession was inconsiderable, being not more than enough to pay expenses. The failure of the executor under these circumstances to deposit it in bank, is not a sufficient ground for removing him.

APPEAL from the Fifth District Court of New Orleans, *Buchanan*, J. *Grymes*, *Winthrop* and *Josephs*, for plaintiff. *Roselius* and *Livingston*, for defendant. By the court:

PRESTON, J. *John Peal* died in this city in July, 1839. On the 7th of that month, he made a will before a notary public, which was duly proved and registered in the Fifth District Court of New Orleans, and the execution thereof was ordered.

By the will he gave to his wife, *Isabella Wilson*, one hundred pounds sterling, per annum, during her life.

He gave and donated to the general school fund of High Hesket, in Cumberland county, in England, the total amount of the interest of his estate, real, personal and mixed. And in the event of the death of his wife, he willed, that the hundred pounds sterling, bequeathed to her annually, should be merged in his estate, and the interest thereof be enjoyed by the general school fund of High Hesket.

He appointed *Thomas P. White*, of New Orleans, his executor, with seizin of his estate. He also appointed three executors residing in High Hesket, in England. They have not qualified in this State.

The father, brothers, except one, and sisters of the deceased, have established their relationship to him, and caused themselves to be recognized as his heirs. They have caused the executor here, to render an account; have had him dismissed, because he did not keep the funds of the estate in a bank paying interest on deposits, as required by the Act of 1837. They also attacked the validity of the will, for many reasons, and succeeded in having it annulled by the district court, for one which is thus stated : " Because no definite and ultimate destination is made of the property of the testator, the interest thereof only being bequeathed." The court came to the conclusion, that a perpetual trust was created by the will, for the benefit of a third person, which is illegal in a testamentary devise in Louisiana, where the will was made and the property

PEALE
v.
WHITE.

is situated; and, at all events, that *White* was not the trustee. Moreover, that no disposition of the capital of the testator's estate was made, but only of the interest.

It does not appear where the deceased resided. His property was entirely personal, consisting of government stocks, bills receivable, and a small sum of money. If the deceased was a resident of England, transiently passing through our country, the disposition of his personal property, according to the laws of England, would be valid. And the official knowledge we have of those laws, enables us to say, that the bequests in controversy, are in conformity to the laws of England.

But if, as the district court considers the case, and the executor has not proved the contrary, the deceased was domiciliated in Louisiana, and, consequently, his personal property was domiciliated here with him, he was obliged to dispose of it according to our laws.

The father is a forced heir for one-fourth of the property, was entitled to an account, and to have the executor dismissed, under the Act of 1837, for failure to keep the money of the estate in bank, or even the court might dismiss him *ex officio* for that cause.

But the difficulty is, that it does not appear by the record before us, that the executor has any money in his hands. The succession consists mostly of government stocks and bills receivable. The executor was not obliged to deposit them in a bank paying interest on deposits, because the bank would not pay interest on them. Nor was the deposit indispensable even for safe keeping. The executor, for the first year of his administration, and his security, after the first year, being responsible for the safety of the stocks and bills. The money was inconsiderable, not more than necessary to pay expenses. The record does not, therefore, present a sufficient evidence to justify the dismissal of the executor, and his punishment under the Act of 1837.

The year of his executorship having expired, the court should require him to give security according to law; and, in default thereof, dismiss him and appoint a dative executor.

The testator disposed of his estate in favor of a wife in England, and a school at High Hesket, in Cumberland county, in that kingdom. This evidently shows, that he intended, that all his effects should be sent there, and he appointed executors there to receive them. If there is nothing illegal in this disposition of his estate, we think the court should, as far as depends upon it, carry the will into effect.

I am of opinion, that there was nothing illegal in the devise, especially as it was to be executed in England. The testator created a capital sufficient to yield his widow, in England, an income of 100 pounds a year. This was a lawful bequest in favor of one for whom he was bound to provide.

He directed the remainder of his estate, in effect, to be capitalized, and the interest to be paid to the general school fund of High Hesket forever. It is my opinion, that the devise of the interest of a fund perpetually, is a devise of the fund itself. It has been so held in England and Massachusetts. 6 Watts, 14. *Garret* v. *Rex*, 6 Mass. Rep. 37. It is a reasonable interpretation of a bequest, and the only one by which the general principle, that the intention of the testator must be ascertained, can be carried into effect. The bequest was also a most useful disposition. He appointed executors in England, evidently to receive his estates, and carry these laudable dispositions into effect. The

executors could easily do so in England, and the administration of the high school, accept and receive the interest on the estate. If the school had been established in this State, the administrators could, under the 1536th article of our code, have accepted it, and received the interest of the capital, which the executors might constitute out of the estate. It is true, the article is placed under the section of the code, which treats of donations *inter vivos* ; but the principle *is* equally applicable to the acceptance of testamentary dispositions. I know, that equally wise and liberal principles of law exist in England ; and, as the devise was in favor of an institution for education, which, I am bound to presume, is intended, like all such institutions, to be perpetual, the means provided to aid in its support, might, in like manner, be of a perpetual character.

I think the case should be remanded, with directions to ascertain whether or not the testator was an Englishman transiently on our shores ; and, if so, to carry the will fully into effect. But if, on the other hand, the court finds that the deceased was a resident of Louisiana, having acquired residence either by a year's residence or an intention manifested to reside here permanently, that in that event, he distribute one-fourth of the estate to the father of the deceased ; and that the balance be held by an executor or deposited safely in a bank, subject to the order of the executors in England, when duly qualified.

It is therefore ordered, adjudged and decreed, that the judgment of the court below be reversed, and the case remanded for further proceedings ; and in conformity to the views expressed in this opinion, the succession to pay the costs of the appeal.

ROST, J. I concur in the decrees about to be made in these two cases, Nos. 2418 and 2699, for the following reasons. I am of opinion, that the bequest of the interest of a fund in perpetuity, when the naked property in it is given to no one in express terms, is evidence of the intention of the testator to bequeath the fund itself, and that the meaning of the words used, should be ascertained with reference to that intention. 1 Prudhom, p. 4, No. 8. Dalloz, *Verbo* Usufruit. Rolland de Vilargues *verbo* Usufruit.

If the bequest of the interest in property, is to be considered in law as a bequest of the fund itself, there is no perpetuity created in any sense, and the only questions remaining, are those depending on the place of domicil of the testator, and the capacity of the Hesket school to take under the will, which is not proved to my satisfaction.

Taking into consideration the facts, that the money of the succession was not much more than sufficient to pay the expenses of administration, I am of opinion, that until the will is set aside, at least in part, the executor cannot be removed from office, at the suit of the plaintiffs, because they have no interest in the succession. The judgment dismissing the executor, must therefore be reversed, and the case remanded to abide by the decision on the main issue.