ODOM, J.
 

 Prank Gandolfo, who was never married, died intestate on June 3, 1927, leaving property, both real and personal. As the succession was much involved in debt, an administration was necessary. His brother, Paul Gandolfo, was named administrator on September 21, 1927. The inventory showed real estate appraised at $19,000 and personal property appraised- at $1,869.39, or a total of $20,-869.39.
 

 On March 1, 1929, more than one year after his appointment, the administrator filed a provisional account, and on September 20, 1929, filed his final account. Both of these accounts were opposed by certain of the heirs of the deceased, but. were approved and homologated. The opponents appealed.
 

 The following items on these accounts are contested:
 

 The provisional account showed the payment of $400 to the attorneys who represented the administrator in opening the succession. This item is opposed as being excessive.
 

 On his final account, the administrator listed the following claims which he proposed to pay: $57.25 additional fee and expenses to the attorneys who opened the succession, $500 to the attorney who represented the administrator after the attorneys who opened the succession had resigned, and $467.16, as commissions due the administrator.
 

 These items were all approved and allowed by the judge of the lower court. We take up and dispose of them in the order above set out.
 

 Mr. Henry G. McCall represented the administrator in opening the succession. He prepared and filed the application of Paul Gandolfo to be appraised and for an inventory, supervised the making and filing of the inventory, in fact performed all the services
 
 *193
 
 necessary in connection with the appointment and qualifying of the administrator. In addition to the above-named services, he advised and counseled the administrator for more than a year and personally looked after and supervised all the details connected with the administration. The deceased owned two pieces of real estate in the city of New Orleans occupied by tenants who were somewhat derelict in the payment of their rents. One of the tenants was charged with violating the prohibition laws, and the property occupied by him was padlocked by federal authorities. All this annoyed the administrator, who took his troubles to his lawyer. Mr. McCall intervened for the administrator in the federal court and succeeded in having the order vacated and the premises restored to the administrator. Some of the property was vacant for about six months. The property was mortgaged to building and loan associations, which demanded their monthly payments. Besides, there were taxes, water and light charges, repair bills, etc., which had to be paid, and at times the revenues from the property were not sufficient to meet the demands. At one time, the administrator, on the advice of his counsel, mortgaged his own property in order to seeúre funds with which to pay taxes on the succession property.
 

 As said, Mr. McCall represented the administrator for more than a year, during all of which time the administrator was constantly consulting with him concerning all the details of the administration, which were many. He said he went to his lawyer for advice almost every week and at times oftener. He was not an educated man, was inexperienced in such matters, which made it necessary for Mr. McCall to scrutinize all the bills to be paid, keep a list of them, and personally write all checks.
 

 This attorney finally resigned, and the administrator listed his fee at $400. In support of their opposition to this fee as excessive, opponents say that the attorney rendered no service except that of having the administrator appointed and qualified. He did more than that, as we have shown.
 

 Considering the amount involved and all the incidental services rendered, we concur in the finding of the trial judge that the fee is not excessive.
 

 As to the item of $57.25, which was allowed the same attorney on the final account, we think that was properly approved also. This item consists of $50 as fee for special services in having the property of the succession released from the padlock proceedings and $7.25 costs incurred in that proceeding.
 

 After Mr. McCall resigned as attorney, the administrator employed Mr. E. A. Parsons to represent him, and on his final account listed his fee at $500.
 

 . This fee is opposed as being excessive.
 

 Mr. Parsons took up the succession where Mr. McCall left it. He made out and filed the provisional and final accounts, both of which were opposed. He opposed the sale of the succession property by the mortgagees, made application to the court to have the property sold by the administrator to pay debts, supervised the sale, and paid the debts. He successfully defended the administrator in the litigation over these accounts in the lower court, and, when the matter was brought to this court on appeal, he filed a brief and argued the case orally.
 

 Considering the amount of detail work done and his several appearances in court, we agree with the district judge that he earned the fee allowed him. •
 

 
 *195
 
 The aggregate amount allowed the attorneys as fees in this case is $930, slightly in excess of 4% per cent, of the inventory. It seems that the minimum fee paid attorneys in New Orleans in succession matters is 3 per cent, of the inventory. As there was more than the usual amount of services rendered by the attorneys in this case, we think the aggregate' of' the fees allowed is not excessive.
 

 The item of $467.16 for the administrator’s commission is opposed on the alleged ground that “the administrator was negligent and incompetent, that he failed to rent some of the property, and permitted rent on some of the property to be collected by his mother and retained, by her, and he failed for over a year to file an account, and never filed an account until forced to do so by the opponents ; that he failed to keep a bank account and deposit therein the funds of the succession.”
 

 The complaint that the administrator permitted his mother to collect certain rents due the succession and retain them has been abandoned, and therefore it is unnecessary to detail the circumstances in that connection.
 

 As to the other charges, we find that some of the property was not leased during the entire period of the administration, but that was due to no fault or negligence on the part of the administrator. He failed to file an account of his administration within a year, and filed it only when called upon to do so by the heirs; he did not deposit in a chartered bank of this state all the funds coming into his hands, and paid various items due by the succession without first obtaining an order of court. But it is conceded by counsel for opponents that the administrator was honest and accounted for all the funds which came into his hands, and further that each and every item paid out by him was due by the succession, except the items opposed as above set out. There is no intimation or suggestion that he acted otherwise than in good faith in administering the affairs of the succession. Whatever errors or mistakes he may have made resulted in no loss or harm either to the creditors or the heirs. He is a man of little education, and, so far as the record discloses, had no experience in affairs of this kind. But he was diligent in looking after the property and faithful in every detail.
 

 The facts are that when he was appointed administrator, he found the real estate incumbered with mortgages in favor of homestead associations, and, in order to prevent immediate foreclosure proceedings, it was necessary to pay not only some past-due assessments, but to. keep up the monthly payments. Practically all the cash which came into his hands in the way of revenues from the property and from other sources he paid direct to the mortgage creditors and took receipts. He also paid water, light, and repair bills, as well as taxes. On one occasion he mortgaged his own property to secure funds with which to pay taxes on the succession property and charged the amount to the succession on his final account. Money came into his hands by dribs and he paid it out the same way but he accounted for all he received.
 

 Prior to the sale of the real estate, he never at any time had in his hands more money than was necessary to keep up the payments to the homestead associations, to pay taxes, current water, light, and repair bills and certain privileged claims. Practically all the proceeds of the sale of the real estate went to pay the mortgage indebtedness. What was left he deposited in the Whitney Trust & Savings Bank of New Orleans, to .the credit of “Sue. of Prank Gandolfo, Paul Gandolfo, Admn.”
 

 
 *197
 
 His provisional account showed that he had paid $500 for funeral expenses, $25 to the church, $12 to a nurse,- $30 court costs, $50 to the curator ad hoc, $25 for the inventory, $10 to the appraisers, $416.39 for taxes, $37.05 for insurance, $15 for grocery bill for deceased, $120.36 on water, gas, and light hills, and $1,270.30 to the Union Homestead Association. These amounts were all paid without an order of court, hut admittedly these were all just claims and many of them privileged, and were all paid on the advice of counsel and with the approval of the surety on his bond.
 

 He did not file an account within a year, but when called upon to do so complied promptly, concealed nothing, accounted for all the funds coming into his hands, and produced bills and vouchers for what he had paid out.
 

 Article 1150 of the Civil Code provides that administrators shall deposit all moneys collected by them, as soon as the same shall come into their hands, in one of the chartered banks of the state allowing interest on deposits, and shall keep a bank book in their official names, and shall not withdraw such deposits until a tableau of distribution shall have been homologated.
 

 Admittedly the administrator failed to comply with the letter of this article of the Code, and, for that reason, opponents ask that he be penalized at least to the extent of being deprived of the commission allowed under article 1069 of the Code, which is 2% per cent, on the amount of the inventory, less bad debts.
 

 The complaints made against this administrator are purely technical. Equitably, no reason has been suggested why he should be penalized by depriving him of the commission which the law allows. He accounted for every dollar which came into his hands, concealed nothing, made no improper use of any of the funds, paid no claims except such as were justly due, acted all through on the advice of counsel, and, when called upon to account, did so promptly and without reserve. Under these circumstances the trial judge refused to penalize him.
 

 This is not an action to oust the administrator or to condemn him to pay the penalties prescribed by article 1150 of the Code, but an opposition to prevent his collecting the commissions allowed by article 1069.
 

 The administrator had full seizin, and administered all the property of the succession; none of it being “unproductive.”
 

 Under the Code he is entitled to 2% per cent, on the amount of the inventory (there were no bad debts), which would exceed the amount charged.
 

 He cannot be denied this commission except upon good cause shown why he should not receive it.
 

 In Succession of Lee, 4 La. Ann. 578, the administrator was not allowed to collect the commissions where it was held that the administration was injurious and not beneficial to the succession.
 

 In Badillo & Chauvin v. Tio, 7 La. Ann. 487, it was held that an executor who withholds property from the legal heirs after the expiration of his executorship is in bad faith and as a consequence can claim no compensation for the administration of it while the tortious possession lasted.
 

 In Succession of Liles, 24 La. Ann. 490, it was held that, “if the evidence shows that loss has occurred to the succession by the gross carelessness of the executor, and that, his administration, instead of being beneficial, • has been injurious to the succession, the executor will not be allowed commissions”— citing Succession of Lee, supra.
 

 
 *199
 
 In Succession of Touzanne, 36 La. Ann. 420, it was held that'the commissions of an administrator are forfeited by maladministration. In that case the administrator concealed a sum of money found in the deceased’s armoir, refused “to make a clean exhibit of what he knew he had received of the dead man’s effects,” and refused to obey repeated orders of the court commanding him to account, and never did so until threatened with contempt proceedings.
 

 In the case at bar, it is not suggested, much less shown, that the administration was injurious to the succession, that the administrator acted in bad faith, that any loss occurred or that he concealed anything.
 

 The opposition to the payment of the commissions in this case is grounded-upon the proposition that the administrator neglected to comply with the letter of article 1150 of the Code, and that he should be deprived of commissions as a penalty, in part at least, inflicted by the Code. If viewed in that light, we do not think this is a case where penalties should be inflicted.
 

 In the case of Congregation v. Earrelly & Hommerich, 34 La. Ann. 533, a suit was brought to destitute the executors and to enforce the penalties provided by sections 1463 and 1465 of the Revised Statutes (Civil Code, arts. 1150 and 1191), on the grounds, first, “that they had failed to file accounts once in every twelve months,” and, second, “that they have not deposited moneys in bank, and,have paid debts without order of Court,” and Justice Eenner, the organ of the court, said: “However this may be, it is well settled that the enforcement of the penalties, provided for this and similar defaults of executors and administrators, is a matter within the sound discretion of the Court. We find nothing in this' case to call for their infliction. Defendants have filed an account, -the fullness and completeness of which is not disputed. The debts paid by them, without order of Court previously obtained, are shown to have been justly due. They are not proved to have made any improper use of succession funds, and are excused for not depositing them in bank, by the fact that there was no bank in the parish.”
 

 In Succession of Sparrow, 39 La. Ann. 696, 704, 2 So. 501, 506, Justice Poche, the organ of the court said:
 

 “As to the demand for the destitution of the administrator, we find no evidence to justify that measure. * * * And we are satisfied that the faults committed by the administrator do not amount to malfeasance, but at most to errors, and honest errors, of judgment.”
 

 The organ of the court then quoted from the 34 La. Ann. case, supra, as follows:
 

 “It is well settled that the enforcement of the penalties provided for this and similar defaults of executors and administrators is a matter within the sound discretion of the court.”
 

 In Succession of Barrett, 43 La. Ann. 61, 8 So. 438, it was held that the enforcement of the penalties against administrators for failure to deposit succession funds in a bank lies within the sound discretion of the court.
 

 In Succession of Head, 28 La.' Ann. 800, the court held that the failure of an administrator to file an account within one year is not cause for his removal, provided that, when called upon to file account, he does so.
 

 In Succession of Boutte, 32 La. Ann. 556, the court said that the paying out of funds of the succession without an order of court and the failure of the administrator to deposit them are violative of article 1150 of the Oivil Code. Nevertheless it was held that, as
 
 *201
 
 against these purely technical violations of the Code, the executor may plead equity.
 

 In Peale et al. v. White, 7 La. Ann. 450, the executor failed to deposit the funds of the succession, but the court refused to remove him for that reason.
 

 In Dickson v. Dickson, 23 La. Ann. 583, the administrator sold a crop of cotton belonging to the succession, and, instead of depositing the proceeds in a bank, let them remain in the hands of a commission merchant, who failed, thereby causing the succession to lose. The court refused to inflict the penalties.
 

 In a much later case, that of Succession of Benton, 100 La. 494, 31 So. 123, 128, 59 L. R. A. 135, the court referred to several of the above-cited eases, making special reference to those holding that the infliction of the penalties in matters of this kind is left to the sound discretion of the court. The court removed the administrator “in view of the several irregularities which have characterized the administration of the defendant,” but did not repudiate the above rule. After referring to those cases, the court said:
 

 “We have been referred to no case, however, in which an executor has been excused where it has been shown that he has paid out the money intrusted to him, without an order of court, in satisfaction of claims for which the succession administered by him was not liable.”
 

 On the other hand, there are many instances where administrators, executors, and syndics have been removed from office or penalized for neglect to comply with article 1150 of the Code, notably the following: Depas v. Riez, 2 La. Ann. 30; Succession of Christy, 6 La. Ann. 427; Reed v. Crocker, 12 La. Ann. 445; Ford v. Kittredge, 26 La. Ann. 190; Gray v. Waddell, 33 La. Ann. 1021; Succession of Benton, supra; Succession of Conery, 111 La. 113, 35 So. 479; In re Dimmick’s Estate et al., Ill La. 655, 35 So. 801; Boone v. Boone, 152 La. 208, 92 So. 861, 864.
 

 In many of these cases, the court denounced in no uncertain terms loose practices by administrators in the handling of the funds coming to their hands, and has consistently held that a departure from the rule laid down in the Code for the administration of successions is cause for removal or the infliction of the penalties prescribed. But we have been referred to no case, and have not been able to find one, where the rule announced in the cases of Congregation v. Farrelly and Succession of Barrett, supra, to the effect that the dismissal of an executor or the infliction of penalties upon him was left to the sound discretion of the court, has been repudiated.
 

 These cases have been referred to in many of the later opinions, but have not been overruled or even criticized.
 

 In the case of Boone v. Boone, supra, the court said: “While a plea of equity against dismissal from office has been admitted by us in a few cases where the administrator has satisfactorily shown that unauthorized payments were made in discharge of debts justly due by the succession administered by him, yet the payments of the sums by him to the widow in this case cannot be justly considered as debts of the succession.”
 

 A reading of the eases in which administrators were destituted or penalized will disclose facts and circumstances quite different from those disclosed by the record in the case at bar. In one case, the administrator withdrew
 
 $14,000 from
 
 the bank and invested the amount in bonds without an order of court. In some cases the administrator used succession funds for his own benefit, in others paid claims not due by the succession, and in others wasted the funds and refused to account when
 
 *203
 
 called upon to do so. In such cases, courts have inflicted the penalties. Under the facts found in each of those cases, the judgment rendered was proper and above criticism, and nothing said in this opinion is intended as a criticism of or as holding against them.
 

 We see no reason why courts should not exercise sound discretion in matters of this kind, . and therefore reaffirm the cases of Congregation v, Farrelly, Succession of Sparrow, and Succession of Barrett, supra.
 

 The judgment appealed from is affirmed, with costs.