258 So.2d 606 (1972)
Succession of Willie Hardy DYKES.
No. 8673.
Court of Appeal of Louisiana, First Circuit.
January 31, 1972.
Rehearing Denied March 22, 1972.
Writs Refused April 13, 1972.
*607 L. B. Ponder, Jr., of Ponder & Ponder, Amite, and Burrell J. Carter, Greensburg, for appellants W. E. Dykes, Individually and as Administrator of the Succession of W. H. Dykes & H. T. Dykes.
Joseph H. Simpson, of Schilling & Simpson, Amite, for plaintiff-appellants-appellees Garfield Dykes.
Before LOTTINGER, SARTAIN and ELLIS, JJ.
SARTAIN, Judge.
Willie Hardy Dykes, hereinafter referred to as W. H. Dykes, died testate on June 23, 1969. He had no children and was predeceased by his parents and his first wife. He was divorced from his second wife. His will provided for a particular legacy of his interest in certain immovable property in favor of two nephews, W. E. Dykes and H. T. Dykes, the sons of a predeceased brother, and provided that the remainder of his estate would go to his first wife, who, however, died after the will was executed.
W. H. Dykes's legal heirs included five surviving brothers and sisters and the children, or others claiming through them, of a predeceased brother and sister. One of the nephews, W. E. Dykes, was appointed administrator of the succession with the consent of the other heirs.
This suit was brought by the deceased's five brothers and sisters and others claiming through the predeceased sister against W. E. Dykes, individually and as administrator, and against his brother, H. T. Dykes, individually. It was alleged that W. E. Dykes had failed to include in the inventory and tableau of distribution a certain sum of cash and other funds on deposit in three banking institutions, which allegedly belonged to the succession. It was further alleged that W. E. Dykes had converted the sum of cash and the funds from two of the bank accounts to his own use and that he had aided his brother, H. T. Dykes, in converting the funds in the third bank account to the latter's own use. Plaintiffs prayed for the return of all such *608 funds to the succession, for the removal of W. E. Dykes as administrator and for the imposition on him of the statutory penalty of twenty percent, under La.C.C.P. Art. 3222, based on the funds allegedly concealed or mismanaged.
The defendants answered that the sum of cash and the funds in the bank accounts belonged to them as a result of donations inter vivos made by the deceased, either as manual donations or as remunerative donations for services allegedly rendered. Both in support of the claim of remunerative donations and as an independent claim, the defendants alleged that they had performed certain valuable services for the deceased and were entitled to reimbursement and compensation for such services on a quantum meruit basis. Defendant W. E. Dykes also reconvened for damages to his character and reputation, alleging that certain allegations made by the plaintiffs against him in his position as administrator were donation to Mrs. W. E. Dykes was perfectdefamatory.
The trial judge found that the sum of $1,400.00 in cash had been given by the deceased to a Mrs. Stone with instructions to give it to Mrs. W. E. Dykes and that Mrs. Stone had delivered it. The court found that, since cash may be the subject of a manual donation, under La.C.C. art. 1539, the donation to Mrs. W. E. Dykes was perfected and the $1,400.00 was properly excluded from the succession inventory. We agree that there was clearly a donative intent, a divestiture of possession and control of the cash by W. H. Dykes and actual delivery to and acceptance by Mrs. W. E. Dykes. We affirm that portion of the judgment.
Two of the three bank accounts were in the names of "W. H. Dykes or W. E. Dykes" and the third was in the names of "W. H. Dykes or H. T. Dykes". The trial judge ruled that accounts such as these, which were actually a savings account, a time deposit open account and a homestead stock certificate or full paid stock account, were not subject to a manual donation, inasmuch as they are considered incorporeal rights and, under La.C.C. 1539, manual donations are restricted to corporeal movables. The trial judge ordered the defendants to return those funds to the succession. We also affirm that portion of the judgment.
The trial judge did allow a portion of the defendants' claims for compensation for expenses incurred on behalf of the deceased on a quantum meruit basis. We find that the parol evidence by which the defendants attempted to prove those claims and on which the trial judge based the awards was legally inadmissible and we will reverse that portion of the judgment in order to deny those claims.
Finally, the trial judge rejected, without assigning reasons therefor, the plaintiffs' prayer for the removal of W. E. Dykes as administrator, for the forfeiture of his fee and for the imposition on him of the statutory penalty and also dismissed the reconventional demand of W. E. Dykes. In our view, the expense and inconvenience of this litigation and the resulting delays in settling this succession have all resulted from the actions of W. E. Dykes as administrator. For reasons hereinafter stated, it is our opinion that he should be removed from office and be held personally responsible for his attorneys' fees in these proceedings. Further, his fee as administrator should be forfeited to the succession.
The plaintiffs and the defendants have appealed. The plaintiffs reurge that the $1,400.00 cash should not have been declared a manual donation, that the awards made to the defendants on the basis of quantum meruit were excessive, and that the administrator should have been removed and penalized. The defendants contend that the funds in the three bank accounts had been donated to them by W. H. Dykes and that the awards to them on the basis of quantum meruit were inadequate; W. E. Dykes reurges his reconventional demand for damages on the ground of defamation.
*609 With respect to the $1,400.00 in cash, it is plaintiffs' contention that W. H. Dykes gave it only for the purpose of paying his last expenses and not as a gift or pure gratuity. Conceding that this is true, the transfer would still have been valid as an onerous donation. Mr. and Mrs. W. E. Dykes testified, and it was either corroborated or not refuted by all other witnesses, that they used the money to pay off the doctor bills, hospital bills, funeral expenses and miscellaneous bills which were unpaid at the time of W. H. Dykes' death. Indeed, no such debts or expenses were listed on the tableau of distribution. Whatever charges may have been imposed, they were fulfilled by the donees. Even if the $1,400.00 exceeded by one-half the amount of the last expenses, the balance, being cash, would still be susceptible of a manual gift. See La.C.C. Arts. 1524, 1526 and 1539.
At the time of the death of W. H. Dykes, the following deposits existed:
(a) Guaranty Bank and Trust Company, Amite, La., Time Deposit Open Account Certificate No. 346 dated December 14, 1968, in the amount of $10,362.29. This certificate was in the names of "W. H. Dykes or H. T. Dykes" and bore annual interest at the rate of 5%. The certificate was in the possession of W. E. Dykes at the time of W. H. Dykes' death and was later given to H. T. Dykes who cashed it.
(b) Community State Bank, Independence, La., Savings Account No. 2004046 in the names of "W. H. Dykes or W. E. Dykes". The exact amount at the time of death was not ascertained; however, on January 2, 1970, W. E. Dykes executed a Savings Withdrawal Order in the amount of $11,378.35 and closed out the account. Under the signature of W. E. Dykes on the withdrawal order there is typed, "Dative Am. Succ. Willie Hardy Dykes".
(c) Ponchatoula Homestead Association, Ponchatoula, La., Stock Certificate No. 2813 dated January 18, 1966, representing 100 shares of the capital stock of the Association of a par value of $100.00 each for an aggregate value of $10,000.00. This stock certificate was further evidenced by Full Paid Stock Account No. 95529. The Certificate and Account were both in the names of "W. H. Dykes or W. E. Dykes". This account was converted to the individual use and name of W. E. Dykes after the death of W. H. Dykes.
With respect to the account in the Guaranty Bank and Trust Company, H. T. Dykes admitted that all of the funds deposited belonged to W. H. Dykes. His claim to the funds is based upon the testimony of his brother W. E. Dykes that W. H. Dykes had instructed him (W. E.) to renew the certificate in only H. T. Dykes's name because he (W. H.) felt indebted to H. T. Dykes for services rendered; however, W. E. Dykes had not done so. A few other witnesses also testified that W. H. Dykes had mentioned generally wanting to take care of H. T. Dykes or leave something to him. W. E. Dykes had possession of the certificate up until the time of death and it is contended that he held it with instructions to give it to H. T. Dykes so that a manual donation was completed thereafter. It appears that H. T. Dykes never withdrew any funds from that account, although he could have done so during the lifetime of W. H. Dykes.
Conceding a donative intent on the part of W. H. Dykes, there was never a real delivery of the funds on deposit and W. H. Dykes remained the owner thereof and retained the power of control or withdrawal until the date of his death, even though W. E. Dykes had actual possession of the certificate of deposit. Of course, there is no merit to the contention that H. T. Dykes became owner of the funds on deposit after the date of death by reason of the statements allegedly made by W. H. *610 Dykes during his lifetime. Verbal testaments or dispositions mortis causa have never been recognized by our Civil Code. La.C.C. Art. 1576. None of the things which could easily have been done was in fact done to transfer the ownership of the funds: execution of a notarial act, under C.C. Arts. 1536 and 1538; manual delivery of the cash or transferring the funds to the account of only H. T. Dykes, under C.C. Art. 1539; or providing for the disposition in a will.
The savings account in the Community State Bank was opened by W. H. Dykes and it was admitted by W. E. Dykes that all of the funds that were deposited from time to time belonged to W. H. Dykes. Although W. E. Dykes claims credit for ensuring that W. H. Dykes received his due return on a business investment in Baton Rouge and although he may have made the actual deposits at the bank, he did not prove that he deposited any of his own money in that account. Again conceding a donative intent on the part of W. H. Dykes, there was no divestiture of control of the funds by him nor any real delivery. In fact, there was testimony by the bank's president that W. H. Dykes had offered the funds to W. E. Dykes for a business venture at one time but that W. E. Dykes had responded, "Uncle Bill, I don't want it now, you may need it, and if you want it you can have it." W. E. Dykes never withdrew any funds during the lifetime of W. H. Dykes and, for the same reasons stated above, i. e., absence of a formal act of donation of the incorporeal right and absence of real delivery of the cash for purposes of a manual gift, the ownership of the funds remained in W. H. Dykes until his death.
The only difference between the accounts discussed above and the stock in the Ponchatoula Homestead Association is that W. E. Dykes claimed ownership of $4,000.00 of the $10,000.00 total represented by the stock certificate. He testified that W. H. Dykes had handed him that amount of cash without any instructions or conditions and that the decision to put it in the homestead stock was his own. However, the trial judge questioned W. E. Dykes about the circumstances of the alleged manual gift. It appears that W. H. Dykes was in the habit of keeping large sums of cash in his house and it was only after a neighbor's house burned down that he gave the $4,000.00 to W. E. Dykes. The trial judge apparently determined that the money was handed over for safe keeping and a true donative intent was lacking. We cannot say that this determination was erroneous. As in the case of the other two accounts, all of the funds deposited were those of W. H. Dykes and whatever incorporeal rights W. E. Dykes or H. T. Dykes may have had to withdraw those funds were extinguished by the death of W. H. Dykes. Likewise, any presumption that funds in a joint account are equally owned was overcome by the showing of the real ownership. The trial judge correctly ordered the return of those funds to the succession of W. H. Dykes.
W. H. Dykes died on June 23, 1969. The plaintiffs filed the Opposition to the Tableau of Distribution on February 27, 1970. The issues raised by that pleading included the $1,400.00 in cash and the three bank accounts, discussed above. The defendants filed an answer on July 23, 1970, and for the first time alleged that they had performed services and incurred expenses on behalf of the deceased sufficient to support remunerative donations inter vivos. Thereafter all parties agreed to an amendment of the defendants' pleadings to allow them to attempt to prove their entitlement to compensation from the succession on the basis of quantum meruit.[1] The significant *611 point is that the defendants did not assert their claims as creditors of the succession until more than one year after the death of W. H. Dykes. L.R.S. 13:3721 provides as follows:
"Parol evidence shall not be received to prove any debt or liability of a deceased person against his succession representative, heirs, or legatees when no suit to enforce it has been brought against the deceased prior to his death, unless within one year of the death of the deceased:
"(1) A suit to enforce the debt or liability is brought against the succession representative, heirs, or legatees of the deceased;
"(2) The debt or liability is acknowledged by the succession representative as provided in Article 3242 of the Code of Civil Procedure, or by his placing it on a tableau of distribution, or petitioning for authority to pay it;
"(3) The claimant has opposed a petition for authority to pay debts, or a tableau of distribution, filed by the succession representative, on the ground that it did not include the debt or liability in question; or
"(4) The claimant has submitted to the succession representative a formal proof of his claim against the succession, as provided in Article 3245 of the Code of Civil Procedure.
"The provisions of this section cannot be waived impliedly through the failure of a litigant to object to the admission of evidence which is inadmissible thereunder." (Emphasis ours)
None of the above procedural requirements was met by the defendants within one year and the only evidence sub mitted to prove the alleged debt or liability of the deceased to them was parol evidence, primarily the testimony of the claimants and their wives, or two unverified written summaries of the alleged services and expenses. Those claims have not been legally proved and must be rejected.
The failure of W. E. Dykes to deposit the funds from the three banking institutions in the bank account of this succession was a clear breach of the duty imposed on him as succession representative by La.C.C.P. Art. 3222. Although his erroneous legal conclusions that the funds belonged to his brother and him were perhaps honestly reached, the proper procedure would have been to include those assets in the succession and assert whatever claims he thought he had to them. This failure to perform a legal duty in a position of trust and involving assets, listed hereinabove, aggregating $31,740.64, is, in our opinion, sufficient reason to remove W. E. Dykes from his office as administrator and to justify the imposition of such penalties as are sanctioned by C.C.P. Art. 3222. The subject article reads as follows:
"Art. 3222. Deposit of succession funds; unauthorized withdrawals prohibited; penalty
A succession representative shall deposit all moneys collected by him as soon as received, in a bank account in his official capacity, in a state or national bank in this state, and shall not withdraw the deposits or any part thereof, except in accordance with law.
"On failure to comply with the provisions of this article, the court may render a judgment against the succession representative and his surety in solido to the extent of twenty percent interest per annum on the amount not deposited or withdrawn without authority, such sum *612 to be paid to the succession. He may also be adjudged liable for all special damage suffered, and may be dismissed from office."
The official revision comment notes that this article is based on Civil Code Article 1150, "except that the source provision makes the penalties mandatory and the above article does not." Succession of Gandolfo, 173 La. 190, 136 So. 561 (1931); Succession of Lombardo, 204 La. 429, 15 So.2d 813 (1943); Succession of Baronet, 222 La. 1051, 64 So.2d 428 (1953). If the twenty percent penalty provision is applied in the instant matter, Mr. Dykes would be cast for the sum of $6,348.13. This is the relief that plaintiffs seek. Inasmuch as the District Judge did not see fit to impose the full penalty, we are not inclined to do so. However, we believe that C.C.P. Art. 3222 permits the imposition of a lesser penalty than twenty percent. Accordingly, we find that Mr. Dykes should be penalized as follows: By the forfeiture of his administrator's fee in the amount of $1,312.50; that he should be required to pay for all attorneys' fees rendered to him in his capacity as the administrator, which fees are listed in the Tableau of Distribution as $2,625.00; and, that he should be required to pay all court costs relating to the opposition by the plaintiffs to the Tableau of Distribution including such costs as accrued in the trial court and all costs of this appeal. This matter is remanded to the trial court for the purpose of permitting the District Judge to allocate that portion of court costs as are attributable to the opposition and render judgment in favor of the Succession of W. H. Dykes in that amount. All other costs pertaining to routine succession matters are, of course, to be borne by the Succession and Estate of W. H. Dykes.
For the above and foregoing reasons, that portion of the judgment of the trial court ordering that W. E. Dykes and H. T. Dykes be listed as creditors of the Succession of W. H. Dykes on the Tableau of Distribution, on the basis of quantum meruit, is reversed and set aside and judgment is rendered herein dismissing those claims as not proved; that portion of the trial court's judgment rejecting plaintiffs' prayer for removal of W. E. Dykes as administrator is reversed and it is hereby ordered that W. E. Dykes be removed from the office of administrator of the Succession of Willie H. Dykes and that penalties attach as hereinabove set forth, namely, by the forfeiture of the administrator's fees, together with the fees for the attorneys representing him in his official capacity as administrator, together with costs of court as above detailed.
Affirmed in part, reversed in part and remanded.
NOTES
[1] W. E. Dykes alleged that he had rendered compensable services for W. H. Dykes which consumed 3,437 hours at a value of $6.00 per hour, that he had incurred out-of-pocket expenses totaling $1,458.00 and that his car expenses totaled some $5,500.00, computed at $0.10 per mile or representing some $55,000 miles.

H. T. Dykes alleged that his compensable services consumed 808 hours at $6.00 per hour, that his miscellaneous expenses totaled $695.00 and that his car expenses totaled $1,900.00 representing 19.000 miles driven on behalf of W. H. Dykes.