140 So. 478

**MARTIN v. HIMEL.**

No. 31174.

Feb. 29, 1932.

Walter Lemann, of Donaldsonville, and Guion & Upton, of New Orleans, for appellant.

Charles T. Wortham, of Donaldsonville, for appellee.

OVERTON, J.

This is a suit by the executor of the estate of Mrs. Lavinia Barton Himel to condemn Mrs. Olive Dodd Himel, natural tutrix of her minor son, Page Himel, the sole issue of his mother's marriage with Clerville Himel, Jr., to render a complete accounting of all money and property in her hands as the agent of Mrs. Lavinia Himel, and to deliver immediately to plaintiff three certain promissory notes, belonging to the estate of Mrs. Lavinia Himel, and to have decreed these notes to belong to Mrs. Himel's estate.

The answer of the tutrix puts at issue the allegations of the executor's petition, made to show that an accounting is due, denies the agency alleged by the executor, urges that the notes demanded by the executor have long since been extinguished by payment, and avers that they are prescribed.

Mrs. Lavinia Himel was the widow of Clerville Himel, Sr. Her husband died many years before she died. There were three children born of the marriage, namely, Clerville Himel, Jr., who lived on Minnie plantation, in St. James parish; Mrs. Clara Himel Connelly, of Houma, La.; and Mrs. Flora Himel Bowden. Mrs. Connelly is the only one of these children, who is now living. Clerville Himel, Jr., left, at his death, the minor, Page Himel, who, through his tutrix, is a party to this suit. Mrs. Flora Himel Bowden left at her death one child, who is Mrs. Colmore, of Chattanooga, Tenn.

On May 21, 1901, Mrs. Lavinia Himel sold to her son, Clerville Himel, Jr., before his marriage, her undivided seven-eighths interest in Minnie plantation for approximately $21,000, the credit portion being represented by three promissory notes for $5,208.33⅓ each. These notes were made payable January 15, 1903, January 15, 1904, and January 15, 1905. Nothing is said in the notes concerning interest. The notes were secured by vendor's privilege and special mortgage on the property sold. The act of sale and mortgage contains a provision to the effect that the maker of the notes, Clerville Himel, Jr., shall have the privilege of extending the payment of any and all of them to January 15, 1913, and that the nonpayment of any one or all of the notes shall be deemed the exercise of this option.

The executor urges that Mrs. Lavinia Himel made this sale for the purpose of relieving herself of all business cares, and to provide a living for herself during the remainder of her life, and that, notwithstanding no interest is mentioned in the notes, which means, under the law, at least as it stood at the date of the execution of the notes, they would bear legal, that is 5 per centum, interest from maturity until paid, it was nevertheless understood that her income from them would be $100 a month, which was, approximately, 8 per centum interest per annum on the notes.

Mrs. Lavinia Himel resided on Minnie plantation with her son, where she had resided before the sale. She, however, paid long visits to her daughter at Houma and her granddaughter in Tennessee. Her son took charge of her affairs, paid her money, as she needed it out of the income of $100 a month, which, according to his statement, made to members of the family, was her income from the notes. He continued to do this until his death, which occurred suddenly on March 18, 1918. At his death the three notes were found in his bank box. The inscription of the mortgage and vendor's privilege, securing them, had not been permitted to expire. The son, so far as appears, had kept no account of his mother's affairs. The executor, without casting the slightest reflection upon the son's memory, but rather to the contrary, concedes the likelihood of its being impossible now to obtain an accounting of the son's administration of his mother's affairs, and expresses belief in the probability that, in one way or another, the son, at the time of his death, had about paid his mother all income due her on the notes, and possibly other money due her, not specified in the record.

Upon the death of Clerville Himel, Jr., his widow qualified as natural tutrix of her son, Page Himel. Mrs. Lavinia Himel continued, after her son's death, to live on Minnie plantation, residing with her daughter-in-law, Mrs. Olive Himel. At the time of the death

of her son, and even before that time, age was beginning to show on Mrs. Lavinia Himel, and she was showing signs of senile dementia.

It is urged by the executor, and it would seem to be established, that Mrs. Olive Himel, after the death of her husband, as tutrix of her minor child, continued with the administration of the affairs of her mother-in-law, which had been begun by her husband. Acting on the advice of her attorney, who was also the attorney for Mrs. Lavinia Himel, she continued to pay the latter $100 a month for some time. She then advised members of the family that she could borrow money at a less rate of interest than she was paying, and since the notes bore, in reality, only 5 per centum interest, she would pay no more than $75 a month. This seems to have been acquiesced in, and thereafter her payments were $75 a month. These sums she deposited in bank in her name for the account of her mother-in-law, and drew upon the account, as occasion required, for her mother-in-law's benefit, paying her bills, and, when her mother-in-law was away on a visit, sending her checks to defray expenses. This continued until the death of Mrs. Lavinia Himel, which occurred, at the age of eighty-three, on December 14, 1922.

Shortly before the death of Mrs. Lavinia Himel, namely on September 29, 1922, which was a month and three days after a judgment of interdiction was rendered against her, Mrs. Olive Himel wrote a member of the family, in response to an inquiry, that Mrs. Himel's estate consisted of a first mortgage on Minnie plantation, securing the three promissory notes, aggregating $15,625, and some swamp land valued at $1,510.

In the early part of 1925, the tutrix, through her attorney, endeavored to secure a loan with which to settle the mortgage, securing the three notes. In August, 1925, the tutrix took the position that the notes were prescribed. This suit was instituted in September, 1926, within ten years from either the interdiction or the death of Mrs. Lavinia Himel.

On November 22, 1911, over six years prior to the death of Clerville Himel, Jr., Mrs. Lavinia Himel declared in an affidavit, made under oath, that all indebtedness of whatever nature, resulting from the business transactions and relations with her son, Clerville Himel, had been settled and liquidated, and that the only indebtedness due her by her son was that represented by the three notes, aggregating $15,625.

■ The tutrix contends that this document evidences a full, perfect, and complete termination of any contract of agency that may have existed between Mrs. Lavinia Himel and her son, and hence that there was no agency for Mrs. Olive Himel, or any one else, to assume. The record, however, shows that this contention is not well founded. The entire conduct of Clerville Himel, Jr., with reference to Mrs. Lavinia Himel, after the execution of that document, shows that the receipt was merely the acknowledgment of an accounting up to the time of its execution, and did not evidence a cessation of the agency.

■■ The tutrix urges that the notes have been paid, and that they are prescribed by the prescription of five years. The evidence, we think, abundantly shows that the notes have not been paid. The fact that they were found in the bank box of the debtor, at the time of his death, is fully explained and ac-

counted for, and consequently the presumption of payment, arising from the debtor's possession of the notes after their maturity, has been successfully rebutted. As to whether the notes have prescribed is a matter of no consequence here. Whether they have prescribed or not, the executor is entitled to their possession. The prescription of the notes does not arise until an effort is made to enforce payment of them, and the plea is then filed.

The trial judge, in a well-considered opinion, has reviewed and analyzed the evidence. He finds that it establishes the executor's demand for an accounting from the tutrix, and also orders her to surrender immediately to the executor the three notes. Our review of the evidence satisfies us of the correctness of the judgment, including the establishment of the agency.

The judgment is affirmed.