411 So.2d 484 (1982)
Succession of Mrs. Flora Mary, Widow of Walter P. VILLERE, Sr.
No. 12518.
Court of Appeal of Louisiana, Fourth Circuit.
February 19, 1982.
*485 Jon A. Gegenheimer, Beoubay & Gegenheimer, Gretna, for appellant.
A. D. Freeman, Satterlee, Mestayer & Freeman, New Orleans, for opponent-appellee (Bethany Villere Tucker, Natural Tutrix of the minor, Walter P. Villere, III).
Before REDMANN, SCHOTT and CIACCIO, JJ.
SCHOTT, Judge.
This case comes to us on a judgment on an opposition by Bethany Sancton Villere, natural tutrix of the minor, Walter P. Villere III (hereinafter opponent) to the tableau of distribution filed by the executor of the Succession of Mrs. Flora Mary Villere. The judgment also deals with opponent's rule to traverse the executor's descriptive list of the succession's assets. Opponent's adversary is decedent's daughter, Mrs. Flora Villere Webber (hereinafter Webber). Webber has appealed from the judgment and opponent has answered the appeal.
Issues on appeal include the ownership of a Mississippi bank account, the liability of the succession on notes payable to Webber (but found in decedent's bank box), with attendant questions of prescription and the admissibility of parol evidence, the right of the legatee of rental property to rents collected since the death of decedent, whether certain items were erroneously omitted from the descriptive list, the entitlement of executor's predecessor to an agreed upon fee considering subsequent disclosures of misconduct on the part of the predecessor *486 and her liability for a penalty because of her conduct, and whether the federal estate tax should be apportioned between opponent and Webber.
Flora Mary Villere died on March 14, 1974, and was survived by her daughter Flora Villere Webber and her grandson Walter P. Villere III, issue of the marriage between decedent's predeceased son and his wife, Bethany Sancton Villere, opponent. In her will decedent divided her property equally between her daughter and grandson except for an extra bequest of rental property at 725 Ursulines Avenue in New Orleans to her daughter. She also named her daughter as testamentary executrix of her succession.
On October 15, 1974, seven months after Webber qualified as executrix, opponent moved to remove her on grounds that she had entered decedent's bank box just after her death and before the box was "frozen" and removed its contents, she (Webber) had failed to secure a depositary for the succession's valuables and she had failed to file a descriptive list. Opponent also alleged that Webber had used succession funds to pay off her cousin's bank loan. This motion was denied on February 6, 1975, but in the meantime Webber filed a descriptive list of succession assets.
The descriptive list provoked a fresh rule by opponent to remove Webber as executrix on the ground that she was "guilty of a breach of the fiduciary relationship" by listing as liabilities of the succession two demand notes dated May 16, 1969, and January 20, 1970, for $15,000 each drawn by decedent to Webber's order. According to opponent this list acknowledged a credit to the principal on the notes of $1,484.63 and an interest payment of $1,000 on January 5, 1974. Opponent alleged that said payments were not made so that the notes had prescribed and that Webber demonstrated a conflict of interests by acknowledging the succession's liability for the notes. Opponent also pled an absence of consideration for the notes.
Opponent further charged Webber with mismanagement because she proposed to pay an excessive fee to the succession's attorney in the amount of $22,500.00, and an executrix's fee to herself of $10,809.30 to which she was not entitled because of mismanagement. Finally, she charged Webber with holding on to succession funds rather than accounting for them and holding them in a succession account.
In her petition opponent also sought to traverse the descriptive list because of its failure to list as succession assets certain stock certificates in Hunt Enterprises, Inc. and a number of bank accounts including one at the Hancock Bank in Bay St. Louis, Mississippi. On February 6, 1975, the trial court dismissed the rule to remove Webber but did not act on the rule to traverse.
On March 25, 1975, a judgment was signed, with the consent of opponent and Webber, accepting Webber's resignation as executrix, appointing Francis C. Doyle executor in her place, appointing opponent's and Webber's attorneys as co-attorneys for the new executor, fixing attorney fees at $22,500.00 to be divided between the attorneys, and fixing the executor's fee at $10,809.30 to be divided between Webber and the new executor.
On December 2, 1975, the executor obtained an exparte order authorizing him to deliver to Webber her legacy of 725 Ursulines Avenue and the net proceeds of $8,819.90 derived from the rent of the property.
On June 17, 1976, the executor filed a tableau of distribution which provoked the opposition and, ultimately, the present appeal. In the tableau the executor recites that the executor's fee of $10,809.30 will be divided between him and Webber "on a basis that will be mutually acceptable to us." He lists the two notes as claims by Webber with the acknowledgment of the credit on principal and payment on interest on January 5, 1974.
In her opposition, opponent renewed her rule to traverse the descriptive list, objected to the payment of the $8,819.90 to Webber as the net proceeds from the rent of 725 Ursulines Avenue and opposed payment of *487 the notes. On March 14, 1978, the opposition finally came to trial but with the added issue raised by opponent that Webber should be penalized 20% for having utilized succession funds as her own while she was executrix.
The trial court amended the descriptive list to include as succession assets a number of accounts including the Hancock Bank account, amended the tableau to strike the two notes as liabilities of the succession, and recalled $1,875.56 for the succession from the $8,819.90 paid to Webber as rent from 725 Ursulines Avenue. It is from this judgment that Webber appealed and opponent answered the appeal. While the executor appeared through his attorney when the case was argued, he made no argument and filed no brief since he takes no position in opposition to the parties and is content to abide by the final judgment in the matter.

ISSUES RAISED BY WEBBER
In this court Webber disputes only the trial court's disposition of the Hancock Bank account and the two notes. The bank account was in the name of Mrs. Walter P. Villere or Mrs. Flora Mary Webber, but Mrs. Villere alone provided the funds deposited into it. Webber argues that the law of the situs of the bank account governs ownership based on Dawson v. Capital Bank & Trust Co. of Baton Rouge, 261 So.2d 727 (La.App. 1st Cir. 1972) and that the law of Mississippi would confer ownership on her.
In Louisiana a bank account is an incorporeal movable, LSA C.C. Art. 473, Suc. of Miller, 405 So.2d 812 (La.1981), and as such its ownership is governed by the domicile of the owner and not by the location of the thing. C.C. Art. 10, Suc. of Thomas, 35 La.Ann. 19 (1883). Under our law the funds on deposit in this account remain the property of decedent absent a showing of a donation as in Suc. of Miller, supra.
The Dawson case may provide some support for Webber's position but it was clearly inconsistent with accepted principles of conflicts of law. In any event the case involved issues not pertinent here and can be distinguished on that ground. We have concluded that the trial judge correctly treated this bank account as the property of decedent.
The other issue raised by Webber on appeal is the exoneration by the trial court of the Succession from liability to Webber on the two notes. Since the notes were payable on demand and dated in 1969 and 1970 they would generally be prescribed in five years, C.C.Art. 3540, unless prescription was interrupted by acknowledgment or payment. Webber argues first that decedent's statement in her April 20, 1973, will, "I desire that all my just debts be paid," constituted an acknowledgment under C.C.Art. 3520 which provides:
"Prescription ceases likewise to run whenever the debtor, or possessor, makes acknowledgment of the right of the person whose title they prescribed."
Next, Webber argues that prescription of the notes was interrupted by the mere opening of the succession in May, 1974, because she could believe that, with the succession proceedings instituted, the matters would be settled in due course without necessity of a suit to enforce collection. Finally, Webber argues that the prescription was interrupted by payment of $1,000 interest by decedent to Webber on January 5, 1974.
These arguments over interruption of prescription need not be addressed because of the fact that the notes were in decedent's possession at the time of her death establishing the presumption of payment of the notes. Martin v. Himel, 174 La. 281, 140 So. 478 (1932); Termplan Arabi, Inc. v. Rodney, 288 So.2d 874 (La.App. 4th Cir. 1974); Hughes v. Hughes, 170 So.2d 251 (La.App. 4th Cir. 1964). While this is a rebuttable presumption the evidence offered by Webber was not sufficient for this purpose. The record does not show when the notes were returned to decedent. We know only these facts from the documents themselves: On May 16, 1969, a collateral mortgage on the property at 725 Ursulines was executed by decedent in favor of Webber *488 securing a bearer note for that amount. It contained the usual provisions that the note would be pledged as security for other notes. On the same date decedent executed one of the $15,000 notes in question here, on the reverse side of which is the inscription:
"Secured by pledge of collateral mortgage favor of Mrs. Flora V. Droulia for $30000.00 per act before Jonas C. Sporl, N.P. dated May 16, 1969."
The second $15,000 note dated January 7, 1970, contains no such inscription.
The only suggestion in this record of any indebtedness by decedent to Webber comes from evidence that Webber delivered to decedent some $36,000 of proceeds from a policy of insurance on her (Webber's) brother in 1964. But if this 1964 transaction was a loan for which the 1969 note for $15,000 was given, the 1970 note cannot be reasonably explained as an acknowledgment of the same 1964 debt because, if it were, it would all have been accomplished at the same time and in the same manner as the 1969 note.
Moreover, this record does not establish that decedent ever issued any of these notes to Webber. The record does establish that all the notes were in decedent's bank box at her death. Furthermore, C.C. 1638 obliges the legatee of mortgaged property to discharge the mortgage, and Webber is the special legatee of mortgaged property upon which the collateral mortgage bears, so that at least the 1969 note if not both (if ever issued, and if not paid or converted into some "invest[ment] in 725 Ursulines" to which the check stub refers) would become Webber's own obligation (and thus extinguished by confusion). Perhaps some investment arrangement with Webber was the justification in decedent's mind for leaving 725 Ursulines to her as the sole departure in her will from otherwise perfect equality of treatment of Webber and the grandchild from the predeceased son.
Thus, we have concluded that Webber is not entitled to collect on the notes irrespective of prescription problems.

ISSUES RAISED BY OPPONENT
Opponent first contends that her rule to traverse the descriptive list was not disposed of in that the list failed to include one share of bank stock in decedent's name. Nowhere in opponent's pleadings in the trial court was this item mentioned so that it is not properly before us on appeal. However, if this item belonged to decedent, opponent is not precluded from bringing the issue before the trial court at this time. It is not unusual for supplemental proceedings to be conducted in a succession in order to account for assets inadvertently omitted at the beginning.
Opponent next contends that the trial judge erred when he recalled from Webber only $1,875.56 of rents from 725 Ursulines Avenue instead of the full $8,819.90 she was paid. As previously stated, this property was bequeathed to Webber and the executor secured an exparte order from the court authorizing him to deliver to her the property along with all net rents collected from the date of decedent's death. In his judgment on opponent's claim that the full amount should be returned to the succession the trial judge ordered returned only that portion of the rents collected between the date Webber resigned as executrix and the date when the legacy was delivered.
Ordinarily a particular legatee is entitled to the thing bequeathed and "the proceeds or interest thereof" only from the date the legatee made demand upon the executor for delivery. C.C.Art. 1626. However, the testamentary executor who is also the legatee is not bound to demand delivery of the legacy but may retain the thing already in his possession by virtue of his seizin of all succession effects, Art. 1628.
The trial judge apparently reasoned that the articles clearly entitled Webber to the rents while she was executrix but that she reverted to the status of any particular legatee once she resigned. On this point opponent could hardly have done better and has no ground to complain.
Opponent next contends that Webber should be denied compensation as executrix because of malfeasance in office. In *489 March, 1975, when Webber resigned opponent agreed that Webber would divide with the present executor the fee of $10,809.30. However, opponent now contends that she learned for the first time during trial of her opposition about misconduct on Webber's part while she was executrix. According to opponent this misconduct consisted of Webber's taking over a homestead account belonging to decedent six years before her mother died and then listing the amount on the succession list of assets for "memo only," voting a salary of $500 per month for herself for doing nothing for Bridgeview, Inc., a corporation whose stock is owned by the succession, and helping herself to $300 of succession funds.
Statutory authority for the removal of a succession representative is contained in C.C.P.Art. 3222 which requires him to deposit all succession moneys in a succession bank account and prohibits him from withdrawing funds except according to law. The article provides for the following penalties for its violation:
"On failure to comply with the provisions of this article, the court may render a judgment against the succession representative and his surety in solido to the extent of twenty percent interest per annum on the amount not deposited or withdrawn without authority, such sum to be paid to the succession. He may also be adjudged liable for all special damage suffered, and may be dismissed from office."
In Succession of Gandolfo, 173 La. 190, 136 So. 561 (1931), relied upon by opponent, the court reiterated that the enforcement of penalties is a matter within the sound discretion of the trial court. Art. 3222 constitutes a codification of this jurisprudence and is a departure from its source, C.C.Art. 1150, which made the penalty of dismissal mandatory. See comment to C.C. P.Art. 3222. Thus, our inquiry is whether the trial judge abused his discretion in declining to deny Webber compensation.
It is understood that opponent does not seek to penalize Webber for a number of serious infractions she committed but which were known to opponent when she was pressing to remove her from office. In effect, the parties reached a settlement at that time under which Webber would resign and would split the executor's fee with her successor. Perhaps the trial judge felt that these late discovered infractions should have been known by opponent before she settled with Webber. Surely, opponent could have conducted discovery to be certain that Webber had not committed other infractions before she compromised with Webber. Opponent was satisfied to have Webber's resignation without digging any further into her record as executrix.
A second point was perhaps considered by the trial judge in declining to penalize Webber. The manipulation of the homestead account occurred not when Webber was executrix but six years before her mother died. Surely an inference arises that decedent was aware of the change of the account from her own name to her daughter's and acquiesced in it.
A further point in mitigation of Webber's fault, perhaps considered by the trial judge, was that Webber made no attempt to conceal the homestead account or the bank account from which she withdrew the $300. She listed them both in her tableau for "memo only." She thus made the existence of the accounts known to opponent and let her know that she claimed them as her own.
Finally, the trial judge was apparently persuaded that Webber's activities with the Bridgeview Corporation did not provide a proper basis for the imposition of penalties under Art. 3222. She and her cousin were members of the corporation's board when her mother died and they added the third member. She joined the other directors in voting herself a salary. Any misconduct which may have been involved was committed by her in the capacity of a director and not as executrix.
We have thus concluded that the trial judge did not abuse his discretion in failing to penalize Webber by depriving her of compensation.
*490 Next, opponent contends that the trial court should have ordered Webber to repay to the estate the salary she drew from Bridgeview. As indicated above, Webber's misconduct here, if any, was not committed as executrix. It seems that this problem could more properly form the basis of an action against the corporation or the directors for malfeasance and it is complicated by the fact that some of the shares are owned by the estate of decedent's husband which would, therefore, have an interest in the matter.
Opponent's next contention that Webber should be assessed the twenty percent penalty provided by Art. 3222 has already been disposed of in our discussion above.
Opponent next asks that the trial court require the executor to take some action regarding a corporation known as Hunter Enterprises, Inc. in which decedent may have had an interest. No appropriate pleadings were ever filed to bring this matter before the trial court and for this reason we decline to consider it.
Finally, opponent takes issue with the federal estate and state inheritance tax returns. First, she says the estate was under evaluated so that more taxes should be paid, and, second, the taxes should be apportioned in accordance with R.S. 9:2432. Here again these issues were not properly raised in the trial court, but nothing seems to preclude opponent from raising the point at this stage. In any event, the record before us does not enable us to recompute the returns and/or apportion the taxes between Webber and opponent.
Accordingly, the judgment appealed from is affirmed subject to recognition of opponent's right to file appropriate pleadings in the trial court to bring to the executor's attention any assets inadvertently omitted from the descriptive list and tableau, such as the one share of stock in the National Bank of Commerce in Jefferson and the alleged claim against Hunter Enterprises, and her right to seek a correction of the tax returns and an apportionment of tax liability in accordance with R.S. 9:2432. The costs of this appeal are taxed against Webber.
AFFIRMED AND REMANDED.