430 So.2d 225 (1983)
Bernell N. FAZANDE
v.
NEW ORLEANS PUBLIC SERVICE, INC. and XYZ Insurance Company.
No. CA-0450.
Court of Appeal of Louisiana, Fourth Circuit.
April 4, 1983.
*226 Kathleen M. Bilbe, Law Offices of Jacqueline Mae Goldberg, New Orleans, for plaintiff-appellee.
C.B. Ogden, II, New Orleans Public Service, Inc., New Orleans, for defendant-appellant.
Before GULOTTA, BARRY and LOBRANO, JJ.
BARRY, Judge.
Plaintiff, Bernell Fazande, sued his employer, New Orleans Public Service Inc. (NOPSI), for workmen's compensation alleging injuries sustained on September 9, 1981. The Trial Judge found the plaintiff temporarily totally disabled as of February 3, 1982 and awarded penalties. The employer appeals urging plaintiff's disability ended November 30, 1981 and no penalty is due.
There is no dispute as to the accident or its occurrence during employment. The issues are the duration and extent of the injury and the award of statutory interest and attorney's fees.
Plaintiff's job[1] was to pump diesel fuel into NOPSI buses. He slipped and fell on a step in the rear of a bus, but did not experience pain until three days later at which time he was examined at Touro Infirmary and given parafon forte. On September 14, 1981 (five days after the accident) he saw the company physician, Dr. Alexrod, who diagnosed plaintiff's injury as a lumbosacral strain and prescribed hot packs, ultra sound, exercises, and parafon forte. After five additional office visits, Dr. Axelrod referred plaintiff to Dr. Habig, an orthopedic surgeon, who examined Fazande on September 24 and also diagnosed a lumbosacral strain. Dr. Habig recommended heat and exercises and felt "the patient is able to return to light duty. I feel he can return to his regular work at Dr. Axelrod's discretion." On September 28 plaintiff returned to Dr. Axelrod who continued to restrict *227 plaintiff's work activity until October 5 (nearly one month after the accident) when he discharged Fazande to resume regular work duties.
NOPSI apparently paid Fazande full wages for the period ending September 19 which covered ten days after the accident. On October 1 Fazande received a final check from NOPSI for $23.62 (net pay) for the period ending September 26. At best, NOPSI paid Fazande for 17 days after his accident, but it isn't clear whether it was sick pay, annual leave or compensation benefits. Payments were discontinued at least one week before Fazande was discharged by Dr. Axelrod on October 5.
Plaintiff received a "separation notice" from the defendant on October 7, 1981 which stated: "Discharged. Misconduct. Employee refused to report to work when cleared as fit to do so by Company physician...." On that same date plaintiff's attorney forwarded a letter to NOPSI demanding compensation benefits and advised: "His treating physician is Dr. A.M. Cotlar who by way of a September 21, 1981 memo notified all concerned that Bernell Fazande is presently unable to return to work." This letter was received by NOPSI on October 13.
Plaintiff had seen Dr. Cotlar, his family physician, on September 21 and gave him a note which stated: "No work until further notice." The Trial Judge made the factual determination that the note was delivered to NOPSI by plaintiff on September 23, 1981. Dr. Cotlar's report dated December 11 states he treated plaintiff from September 21 to November 24, 1981. On the September 21 visit plaintiff was advised to go on light duty if available. Dr. Cotlar prescribed anaprox, parafon forte and therapy. On September 22, plaintiff was seen in the emergency room of St. Charles General Hospital because of increased pain. In addition to reinforcing the previous day's diagnosis, the emergency room physician found muscle spasm. Dr. Cotlar noted spasm was still present on September 28 and on October 13 he feared plaintiff could have a ruptured disc. However, on November 5, Dr. Cotlar felt plaintiff had improved. By November 24 he found no indication of either neurological deficit or spasm and discharged plaintiff to return to work on November 30, 1981. His report concludes: "It is not felt that he has any permanent residual disability referable to his fall of September 21, 1981 [sic]." The record shows NOPSI received Dr. Cotlar's December 11 report on December 30, 1981.
Dr. Llewellyn, neurosurgeon, examined Fazande on October 13, 1981. He found objective muscle spasm in the left paraspinous muscles and his diagnosis was a lumbar sprain. He considered plaintiff "disabled" and stated he "may not return to work until discharged by his private physician." According to NOPSI's brief this report was also received on December 30.
Trial was held January 4, 1982 and plaintiff was the only witness and testified he still had back pains and had a pending appointment with Dr. Llewellyn. The medical evidence was stipulated based on the medical reports and records. The Trial Judge found plaintiff disabled[1] through November 30, 1981, the date he was discharged by his treating physician, Dr. Cotlar, and awarded ten weeks of compensation at $170.00 per week plus medical expenses. The judgment was conditional and did not decide plaintiff's medical condition pending the scheduled appointment, and it left open the question of penalties. The Trial Judge also stated NOPSI was entitled to have plaintiff examined by a doctor of its choice. NOPSI did not appeal and the judgment is final.
At a subsequent hearing on June 4, 1982, Dr. Llewellyn testified he examined plaintiff a second time on February 3, 1982. He had complaints of left leg and low back pain, there was tenderness to palpation, and objective muscle spasm in the left paraspinous muscle region. The diagnosis was lumbar sprain which was stable and slightly improved since his first examination in October, 1981. Dr. Llewellyn's testimony indicates *228 he was aware of plaintiff's duties with NOPSI, and he stated plaintiff was disabled from performing that type of work. He said plaintiff should be retrained for another job that did not involve heavy lifting, jumping or climbing because plaintiff could only perform light work.
Plaintiff testified he still had back pain and could not sleep on his back or walk far without pain. He stated he applied for work at nine places, including NOPSI, but was not hired. He also testified NOPSI did not pay benefits or medical expenses since September, 1981.
The Trial Judge found plaintiff temporarily totally disabled as of February 3, 1982, held defendant's actions were arbitrary and capricious, and awarded $3,500 attorney's fees and 12% penalties.

DISABILITY
NOPSI admits plaintiff was entitled to compensation through November 30, 1981. However, Dr. Llewellyn found plaintiff was disabled as of February 3, 1982 and his testimony is uncontradicted. NOPSI could have had plaintiff examined after the January hearing, but failed to do so. Based upon the unrefuted evidence we agree plaintiff was continuously disabled.
However, we find the evidence insufficient to maintain the trial court's determination of temporary total disability under LSA-R.S. 23:1221(1):
For injury producing temporary total disability of an employee to engage in any gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, ....
By contrast, LSA-R.S. 1221(3) defines partial disability:
For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience, sixty-six and twothirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, during the period of disability, ....
Plaintiff testified he worked light duty one weekend on National Guard duty and was able to peel potatoes, cook, and repair small generators. Apparently this work did not cause pain nor did he say he was unable to perform other light duties. His unsuccessful efforts to secure light work at nine places indicates he is capable of engaging in some "gainful occupation."
Dr. Llewellyn's testimony, clearly relied on by the Trial Judge, specifies plaintiff could do light work. The doctor said Fazande was disabled "from a job of the type he was performing" when injured. He opined if plaintiff was restricted to light duty, as opposed to manual labor, he would be comfortable and could work.
Therefore, the evidence does not support a finding that plaintiff could not engage in "any gainful occupation" under LSA-R.S. 23:1221(1). Accordingly, we hold plaintiff was partially disabled because the injury rendered him unable "to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience ...." See Dufrene v. St. Charles Parish Police Jury, 371 So.2d 378 (La.App. 4th Cir.1979).

PENALTIES AND ATTORNEY'S FEES
Whether an employer's refusal to pay or its discontinuance of payments is *229 arbitrary, capricious and without probable cause is a question of fact. Newell v. New Orleans Public Service Inc., 402 So.2d 246 (La.App. 4th Cir.1981), Smith v. Borden, Inc., 413 So.2d 701 (La.App. 4th Cir.) writ denied 420 So.2d 171 (1982).
LSA-R.S. 23:1201.2(A) provides:
Any employer whose liability for claims arising under the provisions of this Chapter is not covered by insurance, shall pay the amount of any claim due under the provisions of this Chapter, within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the employer to a penalty, in addition to the amount of claim due, of 12% of the total amount of such claim, payable to the claimant, together with all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due, and all reasonable attorney's fees for the prosecution and collection of such amount. Any such employer who at any time discontinues payment of claims due and arising under the provisions of this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the penalties set forth above, payable to the claimant, together with all reasonable attorney's fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney's fees shall not apply in cases wherein the employer is found liable for penalties and attorney's fees under the provisions of this Section.
An employer will not be automatically assessed penalties based on a refusal to pay benefits even if the facts and law reveal the refusal or discontinuance was erroneous. To assess penalties it must be found that the employer's actions were without reasonable foundation. If an employer relies on competent medical reports which state the claimant is no longer disabled and capable of returning to his former duties, penalties are not appropriate. Nor are penalties imposed if there is a genuine dispute in medical evidence; the employer is entitled to defend based upon a bona fide medical dispute as to whether the claimant has recovered from the disabling injury. Powell v. Johns-Manville Sales Corporation, 410 So.2d 308 (La.App. 4th Cir. 1982), Conner v. Travelers Insurance Company, 324 So.2d 903 (La.App. 3d Cir.1975) writ denied 329 So.2d 454 (1976), Levine v. Liberty Mutual Insurance Company, 305 So.2d 665 (La.App. 3d Cir.1974).
The employer's actions are judged on the existing facts known to him when payments are stopped. Thibodeaux v. Dresser Industries, Inc., 407 So.2d 37 (La. App. 3d Cir.1981) writ denied 412 So.2d 85 (1982). In this case defendant received plaintiff's demand letter on October 13, 1981 which stated Dr. Cotlar was treating plaintiff and it was the doctor's opinion he could not return to work. Just prior to this, defendant was informed by its house physician, Dr. Axelrod (who consulted an orthopedic surgeon who agreed with his findings), that plaintiff had totally recovered from his injury. Defendant received no other medical reports until December 30, 1981, five days prior to the first hearing. One report, by Dr. Llewellyn, concluded plaintiff was disabled but could return to work when discharged by his private physician, Dr. Cotlar. Dr. Cotlar's report discharged plaintiff as of November 30, 1981. At this point a medical dispute existed and defendant could safely rely on the reports of Drs. Axelrod and Habig.
After trial in January, 1982 the Judge concluded plaintiff was disabled through November 30, 1981. Defendant admits benefits were due through that date. However, after the appeal time had run, defendant failed to pay that judgment and its refusal is clearly arbitrary and capricious. See Chivoletto v. Johns-Manville *230 Products Corporation, 330 So.2d 295 (La. 1976).[2]
Subsequent to the January hearing, plaintiff was examined by Dr. Llewellyn on February 3, 1982. The defendant admitted at the June, 1982 trial it received Dr. Llewellyn's report which stated plaintiff was disabled from manual work but could do light duty. It was then incumbent on the defendant-employer to have the plaintiff examined or begin paying compensation. Unfortunately, the defendant did neither and its course was total inaction by ignoring the January judgment and Dr. Llewellyn's last medical report. The purpose of the penalty statute is to discourage such indifference toward an injured employee. Alexander v. Dept. of Culture, Recreation and Tourism, 410 So.2d 1286 (La. App. 3d Cir.1982). There is no doubt the defendant's action (inaction) was arbitrary and capricious. The lower court awarded $3,500 attorney's fees which is reasonable[3] for this litigation involving two trials and this appeal.
We amend and recast the judgment appealed and render judgment in favor of plaintiff decreeing Bernell N. Fazande to have partial disability as defined in LSA-R.S. 23:1221(3) and entitled to the benefits provided therein subject to a credit for compensation paid, plus 12% penalty on all amounts past due and $3,500 attorney's fees. Defendant to pay all court costs.
AMENDED AND AFFIRMED.
NOTES
[1] His job also included cleaning and repairing buses, "vault-pulling," and other duties.
[1] A judgment was rendered orally on January 4, 1981 and signed January 20, 1981.
[2] While this was part of the holding in the majority opinion, on application for rehearing, it was stipulated by counsel that the judgment had been paid within a reasonable time and the Supreme Court modified its original decree.
[3] The only restriction on attorney's fees is that they be reasonable. Patton v. Silvey Companies, 395 So.2d 722 (La. 1981).