503 So.2d 106 (1987)
Shirley Isemann Wife of/and Francis LUTZ
v.
JEFFERSON PARISH SCHOOL BOARD.
No. 86-CA-596.
Court of Appeal of Louisiana, Fifth Circuit.
February 9, 1987.
*107 Joseph Bernstein, New Orleans, for plaintiffs-appellants.
Jo Ellen McMillen, Gretna, for defendant-appellee.
Before CHEHARDY, WICKER and GOTHARD, JJ.
WICKER, Judge.
This appeal arises from a worker's compensation claim filed on behalf of plaintiffs/appellants Shirley Isemann (Isemann), wife of and Francis Lutz (Lutz) seeking benefits after these had been terminated by defendant/appellee, Jefferson Parish School Board. Appellants also seek attorneys' fees, interest and penalties. The trial judge rendered judgment on January 31, 1986 declaring Isemann to be totally and permanently disabled and that compensation be paid in accordance with L.S.A.-R.S. 23:1221.[1] He also denied Isemann's claim *108 for attorneys' fees and penalties and found that the school board had not acted arbitrarily and capriciously when it terminated her weekly compensation benefits. Isemann now appeals the judgment denying her claim for attorneys' fees and penalties. She also urges this court to determine the amount of compensation to which she is entitled. We affirm in part and reverse in part and remand.
On October 19, 1984 Isemann and Lutz filed a "Rule to Show Cause Why Employee Benefits Are Not Being Paid." In their rule, petitioners assert that Isemann is totally disabled and that she had not received benefits for over two years from the school board. They also sought all accrued interest, penalties and attorneys fees as well as all past and future benefits due. On December 11, 1984, the school board filed an answer to the original petition which had been filed on June 19, 1980. Their answer generally denied all of the allegations contained in the original petition.
In their original petition styled "Petition For Workmen Compensation Benefits", Isemann sought compensation and all medical expenses. An exception of prematurity was filed by the school board in which they averred that all compensation and medical benefits which had been submitted were paid.
In opposition to the exception petitioners, through counsel, filed a memorandum in opposition which stated in pertinent part that "Petitioner, Shirley Isemann, wife of Francis Lutz filed a suit for workmen compensation benefits after the Jefferson Parish School Board refused to supply her with orthopedic shoes but at the time of the filing of the petition there was a genuine issue between the parties."
Although a minute entry dated October 13, 1980 reflected that the exception had been granted and the suit dismissed, this was evidently not the case. On November 29,1984, the trial judge entered a judgment in response to a motion to strike wherein he ordered that the minute entry of October 13, 1981 be stricken. He particularly decreed that the suit was not dismissed.
On June 11, 1985, the trial judge, in response to plaintiffs' "Motion to Set Contested Workmen's Compensation Claim for Trial" set a trial date of July 8, 1985. In this motion, plaintiffs assert that they were notified by letter dated June 5, 1985 that the defendant would stop paying weekly compensation, effective immediately. Isemann alleged that she was unable to perform any job whatsoever. Petitioners further asserted that the actions of the defendant were arbitrary and capricious and that they were entitled to interest and penalties as well as to attorneys' fees.
On June 8, 1985 the matter was partially heard and held open for the purpose of receiving depositions. On January 31,1986 the trial judge rendered judgment.
In response to their suit for relief from the termination of benefits on June 5, 1985, the trial judge declared Isemann to be totally and permanently disabled; however, he did not determine a specific dollar amount for compensation.
Appellant specifies the following errors:
1. That the trial judge was manifestly erroneous when he failed to find that Jefferson Parish School Board acted arbitrarily and capriciously in denying her claim for attorneys' fees, interest and penalties, and
2. That this court determine "the proper calculation of the benefits to which Isemann is entitled" under the trial court's judgment.
Appellant contends that she is not receiving the full amount of weekly benefits which are due to her. She asserts that Jefferson Parish School Board is deducting from her weekly compensation the amount she is receiving from her retirement income. She urges this court to address the issue of whether or not appellee is entitled to such a credit.
The trial court's judgment reads in pertinent part as follows:
IT IS ORDERED, ADJUDGED AND DECREED that plaintiff be declared totally and permanently disabled and that compensation be paid in accordance with R.S. 23:1221.

*109 IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of defendant, Jefferson Parish School Board, in that termination of plaintiff's weekly compensation benefits were not arbitrary and capricious.
Appellant notes in brief that the trial judge awarded compensation "subject to any credits to which defendant may be entitled." However, as indicated above, the trial judge did not include this phrase in his judgment; instead, the phrase is included in his reasons for judgment. Louisiana jurisprudence has held that reasons for judgment do not constitute a judgment. See L.S.A.-C.C.P. Art. 1918; Pearce ex. rel. Livestock Sanitary Board v. Johnson, 250 So.2d 567 (La.App. 3rd Cir.1971).
The trial judge clearly distinguished his judgment from his reasons for judgment by labeling each accordingly. Unlike the case of Hinchman v. International Bro. of Elec. W.L.U. # 130, 292 So.2d 717 (La. 1974) on remand 299 So.2d 818 (La.App. 4th Cir.1974) writ denied 302 So.2d 618 (La.1974) cert. denied 421 U.S. 950, 95 S.Ct. 1683, 44 L.Ed.2d 104 (1975) there is no confusion regarding the intention of the judge as to which portion constitutes his judgment.
Recently, our brothers in the Fourth Circuit have noted that "[o]n appeal, this court reviews judgments  not "cases" or "reasons for judgment." Succession of Velasquez-Bain, 471 So.2d 731, 751 (La.App. 4th Cir.1985) writ denied 476 So.2d 354 (La. 1985).
Thus, the trial court made no ruling relative to any credits. In fact, neither party sought through any pleading a clarification regarding credits in the trial court. The transcript further reveals that no testimony or evidence was introduced regarding any credits to be given the school board. Moreover, there is no evidence or testimony regarding the actual amounts of compensation owed to Isemann.
While there was a joint stipulation at trial that appellant was injured in the course and scope of her employment for the School Board, there was no stipulation nor any evidence regarding her wages on the date of the accident.
L.S.A.-R.S. 23:1021(7) (pre-1983) defines "wages" as:
`Wages' means average weekly wage at the time of the accident. The average weekly wage shall be determined as follows: (a) If the employee is paid on an hourly basis, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the injury or forty hours, whichever is greater; (b) If the employee is paid on a monthly basis, his monthly salary divided by four; (c) If the employee is employed at an annual salary, his annual salary divided by fifty-two; and (d) If the employee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six week period and multiplied by four; provided, however, that if such an employee has worked for the employer for less than a twenty-six week period immediately preceding the accident, his gross earnings from the employer for the period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said period and multiplied by four.
Since there is absolutely no testimony or evidence in the record for the trial judge to have determined the appropriate dollar amount, we cannot say that the trial judge erred by failing to set a figure.
In addition, while appellant alleges that the weekly compensation check being tendered to her is reduced by appellee in the amount of her retirement disability benefits these are allegations which are presented for the first time on appeal without the benefit of any hearing to take evidence and testimony. Thus, Isemann's assertion that her check is reduced is not properly before this court. Handy v. Cheatum, 410 So.2d 322 (La.App. 4th Cir. 1982).
*110 Further, appellant's reliance on L.S.A.-C.C.P. Art. 2164 as authority for this court to make an initial fact-finding determination is misplaced since there is nothing properly before us on appeal. Succession of Villere, 411 So.2d 484 (La. App. 4th Cir.1982). Appellant, however, is not precluded from bringing these issues before the trial court. Succession of Villere, supra.
The general rule is expressed in Placid Oil Company v. Taylor, 313 So.2d 626 (La.App. 3rd Cir.1975) writ granted and remanded for rehearing, 318 So.2d 40 (La. 1975), on remand, 325 So.2d 313 (La.App. 3rd Cir.1975), writ denied, 329 So.2d 455 (La.1976) is that:
Ordinarily issues not passed on by the trial court are not reviewed by the appellate court, but the appellate court, in discharging its duty to render judgment which is just, legal and proper upon the record, has authority to consider any legal point or theory presented in the case, when the record contains all the necessary evidence to determine the question, even though no ruling was made on that issue by the trial court, L.S.A.-C.C.P. Article 2164, and comment a under that article [Emphasis supplied]. 313 So.2d at 630. See also Roberson v. Cities Service Co., 478 So.2d 211 (La. App. 3rd Cir.1985).
Accordingly, we deny appellant's request for this court to determine the amount of compensation to which she is due.
Appellant also asserts that the trial judge erred when he failed to award statutory penalties and attorneys' fees under L.S.A.-R.S. 23:1201.2 for the arbitrary and capricious discontinuance of benefits. As the trial judge correctly noted in his reasons, this statute is penal in nature and must be strictly construed. Crawford v. Al Smith Plumbing and Heating, 352 So.2d 669 (La.1977). "[It] should be imposed only in those instances in which the facts negate probable cause for nonpayment." 352 So.2d at 673.
Moreover, the trial court's determination that the employer did not act arbitrarily is a factual question, Fazande v. New Orleans Public Service, Inc., 430 So.2d 225 (La.App. 4th Cir.1983), which should not be disturbed on appeal absent a clear error. Williams v. Western Preferred Casualty Insurance Co., 465 So.2d 191 (La.App. 3rd Cir.1985).
Dr. N.A. Chetta, Isemann's personal physician, testified that he was the first to treat her when she was injured. She suffered an injury to her ankle which he diagnosed as neuritis, a condition where the nerve is inflamed or has been injured.
Dr. Chetta, however, referred Isemann to an orthopedic specialist. In Dr. Chetta's report dated June 12, 1985 he stated that "[Isemann] has a recurrent, persistent, traumatic, irritating neuritis which has not responded to any treatments. As you are aware she has been to see several physicians, some specialists, who have been unable to control her symptomology. I myself feel that she is completely disabled because of this, and I suggest that if possible a second orthopedic opinion be obtained regarding her condition and/or disability."
The school board, however, relied on the medical report dated May 23, 1985 by Dr. Earl J. Rozas, an orthopedic specialist. He stated in his report that:
I feel that she has reached maximum medical recovery. It is my opinion that she is capable of resuming some type of gainful employment and that she is not disabled from all kinds of employment. Any employment which would alternate sitting and standing would surely be well tolerated by [Isemann]. I examined her as well as took a history and there are no problems other than the right ankle that I am aware of. It is my opinion that she has a permanent partial disability of 5 percent of the foot and ankle as a result of persistent pain.
Dr. Rozas testified that he saw Isemann several times. He first saw her on April 30, 1980 after she had been referred by Dr. Chetta. He next saw her on thirteen other occasions, with the last visit being May 8, 1985.
On May 8, 1985 she was sent to him by the school board for a re-evaluation. He *111 diagnosed her condition as a "persistent residual ankle sprain with peroneal tendonitis of the right foot, superimposed on a cavus foot."
In his deposition he explained that he meant by "persistent" pain not that it was constant but that it would not go away despite all treatment.
Dr. Herbert K. Plauche, an orthopedic surgeon, testified that he first examined Isemann on July 17,1984 and then again on June 18, 1985. Her initial evaluation was scheduled at the request of Gerald Juneau of the Louisiana Teachers Retirement System. He felt that on June 18, 1985 she was disabled and unable to perform her usual occupational duties.
The trial judge noted in his reasons for judgment that "[t]he evidence did not show that defendant acted arbitrarily or capriciously because there was a legitimate dispute as to whether plaintiff was in substantial pain and the termination of benefits were not without probable cause because it was based on Dr. Rozas' report."
Dr. Rozas did indicate that Isemann had a 5% permanent partial disability of the foot and ankle while at the same time indicating that she could return to work in which she could alternate sitting and standing. At the time of the injury, L.S.A.-R.S. 23:1221(4)(p) (pre-1983) provided in pertinent part that:
[i]n cases not falling within any of the provisions already made ... where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable and in proportion to the compensation hereinabove specially provided in the cases of specific disability, not to exceed sixty-six and two-thirds percent of wages during one hundred weeks.
Although Dr. Rozas did not specify whether Isemann had a 5% functional disability, the defendant was nonetheless placed on notice by Dr. Rozas' report that Isemann would probably be entitled to benefits of some type, L.S.A.-R.S. 23:1221(4)(p) (pre-1983), since she could only return to work with some restrictions. Moreover, "an insurer (or an employer) is required to make a reasonable effort to ascertain an employee's exact medical condition before benefits are terminated (or denied). Johnson v. Ins. Co. of No. America, 454 So.2d 1113 (La.1984)." Duplechain v. Gulf States Utility Co., 468 So.2d 1386 (La.App. 3rd Cir.1985) at 1390.
When the defendant learned that plaintiff could only return to work with restrictions,[2] it was incumbent upon defendant to seek further evaluation. Defendant, however, did not do so. This inaction on their part is the type of indifference toward an injured person which the statute seeks to penalize. Alexander v. Dept. of Culture, Recreation and Tourism, 410 So.2d 1286 (La.App. 3rd Cir.1982); Fazande v. New Orleans Public Service, Inc., 430 So.2d 225 (La.App. 4th Cir.1983).
For the foregoing reasons we reverse the trial court's denial of Isemann's claim for statutory penalties and attorneys' fees and decree that such claim is allowed after the defendant received notification from Dr. Rozas. In all other respects the judgment of the trial court is affirmed. We remand to the trial court to determine: (1) the weekly compensation benefits and medical expenses to which Isemann is entitled;[3] (2) the amount of the compensation and medical expenses past due and from that determination the amount of the statutory penalties all in accordance with L.S.A.-R.S. 23:1201.2 (pre-1983),[4] and (3) the date from *112 which the statutory penalties and attorneys' fees are to be awarded.
Since the whole matter is being remanded back to the district court and since there is nothing in the record with which to make a fair determination of reasonable attorneys' fees, we also remand this matter to the district court for the determination of reasonable attorneys' fees in accordance with Disciplinary Rule 2-106(B). Almerico v. Katsanis, 458 So.2d 158 (La.App. 5th Cir.1984); Reed v. Verwoerdt, 490 So.2d 421 (La.App. 5th Cir.1986).
AFFIRMED IN PART; REVERSED IN PART AND RENDERED; REMANDED.
NOTES
[1] Isemann's injury occurred before the 1983 amendment of the worker's compensation statute, references in this opinion are to statutes as they appeared prior to 1983 La.Acts 1st Ex.Sess. No. 1; but see footnote 3.
[2] Isemann testified that she quit work in July, 1982 when she took her disability retirement. Although during oral argument counsel for the school board suggested that she had been offered a job consistent with Dr. Rozas' opinion, there is no testimony in the record to that affect.
[3] As noted previously, the issue of whether any credit for retirement disability should be allowed is not before this court. Therefore, we do not express any opinion regarding whether L.S.A.-R.S. 23:1225(C)(1) (1983) is applicable.
[4] L.S.A.-R.S. 23:1201.2 (pre-1983) provides that:

Any employer whose liability for claims arising under the provisions of this Chapter is not covered by insurance, shall pay the amount of any claim due under the provisions of this Chapter, within sixty days after receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the employer to a penalty, in addition to the amount of claim due, of 12% of the total amount of such claim, payable to the claimant, together with all reasonable attorney's fees for the prosecution and collection of such claim, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due, and all reasonable attorney's fees for the prosecution and collection of such amount. Any such employer who at any time discontinues payment of claims due and arising under the provisions of this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the penalties set forth above, payable to the claimant, together with all reasonable attorney's fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney's fees shall not apply in cases wherein the employer is found liable for penalties and attorney's fees under the provisions of this Section.